ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
DONNA M. WITTIG, ESQ.
Nevada Bar No.11015
AKERMAN LLP
1160 Town Center Drive, Suite 330
Las Vegas, NV 89144
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: ariel.stern@akerman.com
Email: darren.brenner@akerman.com
Email: donna.wittig@akerman.com

*Attorneys for Plaintiff Bank of America, N.A.*

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BANK OF AMERICA, N.A.,

Plaintiff,

vs.

SFR INVESTMENTS POOL I, LLC; MONTEREY SQUARE AT MOUNTAIN'S EDGE HOMEOWNERS ASSOCIATION; DOE INDIVIDUALS I-X, inclusive, and ROE CORPORATIONS I-X, inclusive,

Defendants.

---

SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company,

Counter-Claimant,

vs.

BANK OF AMERICA, N.A., a national association; DONNA CURTIS, an individual,

Counter-defendants/Cross-Defendants.

---

MONTEREY SQUARE AT MOUNTAIN'S EDGE HOMEOWNERS ASSOCIATION, a

Case No.: 2:15-cv-01042-APG-GWF

**MOTION FOR PROTECTIVE ORDER FROM THE 30(B)(6) DEPOSITION OF BANK OF AMERICA, N.A.**

Nevada non-profit corporation,

Third-Party Plaintiff,

v.

ALESSI & KOENIG, LLC, a Nevada limited liability company,

Third-Party Defendant.

Bank of America, N.A. (**BANA**) moves the court for protection under Federal Rule of Civil Procedure 26(c) from the deposition of BANA's corporate representative(s) noticed by defendant SFR Investments Pool I, LLC (**SFR**) as the topics are outside the scope of discovery and not proportional to the needs of the case under Rule 26(b). SFR noticed the deposition for April 4, 2016. Due to scheduling conflicts, the parties have agreed the deposition will not proceed on April 4 and are working to identify alternate dates should the court not grant this motion. After personal consultation and sincere effort to do so, counsel for BANA and SFR have been unable to resolve the issues without court action.

## I. INTRODUCTION.

This case represents one of several hundred in Nevada in which a purchaser at a homeowners' association's non-judicial foreclosure sale allegedly acquired a property for a fraction of its fair market value and contends it owns the property free and clear of a senior deed of trust. SFR purchased or acquired many properties at HOA foreclosure sales and contends it owns them free and clear of a senior deed of trust lien. BANA brought this action to, among other things, declare SFR's claim to title void. SFR's deposition notice containing 20 topics is disproportional to the needs of the case and seeks information that can be provided through written discovery. Alternatively, the deposition and its topics are premature because the court cannot assess any proportionality under Rule 26(b) until BANA has responded to SFR's written discovery requests.

SFR seeks to burden BANA by improvidently mandating BANA's corporate representative leave its principal place of business—the presumptive location for BANA's deposition—to travel to SFR's counsel's location and provide testimony on 20 topics that have been, or could be, addressed

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

through written discovery. Of the 20 topics, SFR itself previously conceded the majority can be addressed through written discovery, withdrawing all but 4 of the depositions topics in **eight** different cases pending in the United States District Court for the District of Nevada.[1] This agreement is noted in a case referred to as *Garcia*. SFR withdrew eighteen of its twenty-two deposition topics after SFR received BANA's responses to SFR's discovery requests. After meeting and conferring, the parties agreed there was only a need for deposition testimony on 4 of SFR's deposition topics.[2] SFR now changes its position without any reasonable basis.[3] **All** deposition topics can be dealt with by written discovery. SFR's deposition to merely have an individual regurgitate written discovery responses should be prohibited as wasteful and an abuse of discovery.

BANA's discovery responses are currently due on March 30, 2016, and the deposition is currently noticed for April 4, 2016. BANA's responses will moot any need to conduct a 30(b)(6) deposition. BANA should not be compelled to testify on irrelevant topics or topics on which it has provided sufficient information in writing, or required to incur the cost of a deposition in each of the hundreds of pending HOA cases where relevant information is obtainable through written discovery, including that propounded by SFR in this case.

---

[1] *See* Deutsche Bank's renewed motion for protective order filed in *Deutsche Bank Nat'l Trust Co., as Trustee in Trust for the Certificate Holders of Harborview Mortg. Loan Trust Series 2005-7, Mortg. Pass-Through Certificates, Series 2005-7 v. S. Highlands Cmty. Ass'n. et al.* for a discussion of the parties agreement in the eight affected cases. No. 2:15-cv-1276RFP-NJK (doc. 43), ex. 2, at 2-3 ¶¶ 4-6; *see also* SFR's resp. to Deutsche Bank's renewed motion for protective order (doc. 48), ex. A-1, at 1-2. This case was not one of the original eight cases subject to the parties' agreement to withdraw all but four of the deposition topics; however, these cases demonstrate SFR's concession BANA's written discovery responses obviate the need for deposition testimony.

[2] *Bank of Am., N.A. vs. SFR Invs. Pool I, LLC et al.*, No. 2:15-cv-1097-GMN-NJK, Renewed Emergency Mot. for Protective Order from Dep. Notice of Rule 30(b)(6) witness of BANA, at 2, lines 11-12 (doc. 24). Magistrate Judge Koppe ordered the parties to meet and confer after SFR received BANA's written discovery requests to determine whether the parties could narrow their dispute.

[3] SFR now claims any written discovery responses will not limit a single deposition topic. SFR has not articulated a persuasive reason for its change of position. SFR is not willing to withdraw any topic based on its unfounded belief deposition testimony on all topics is needed as these cases will go to trial in light of the Nevada Supreme Court's decision in *Shadow Wood*. *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp, Inc.* 132 Nev. Adv. Op. 5, ___ P.3d ___, 2016 WL 347979 (Nev. Jan. 28, 2016). SFR has articulated no reason why these cases are not capable of resolution as a matter of law. In fact, the Court's decision in *Shadow Wood* indicates a foreclosure sale for less than 20% of the property's fair market value is grossly inadequate ***as a matter of law.*** SFR also basis its change of position due to "prior deposition testimony that contradicted written discovery and the need to ask follow up questions." But SFR again has not provided **any** examples of prior deposition testimony that contradicted written discovery or needed follow-up questions.

{37721525;2}

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

Under Rule 26(b)(1), discovery must be proportional to the needs of the case. This case does not require a deposition of BANA for SFR to obtain discoverable information readily available from less intrusive sources. BANA moves for protection to prevent the deposition, at least until SFR can demonstrate BANA's responses to written discovery are insufficient.

If the Court believes SFR is entitled to a deposition, the needs of the case do not justify requiring BANA to travel from Dallas to Las Vegas for a nominal deposition. SFR should be required to take the deposition by some other means—such as telephone or video—or travel to the location of the deponent if it wishes to take the deposition in person.[4] This is precisely the approach recently taken by Magistrate Judge Koppe, ordering that plaintiff could have testimony on four topics, but also finding that the witness could appear by video.[5]

## II. BACKGROUND FACTS.

This is one of hundreds of pending disputes in Nevada arising out of a homeowners' association foreclosure sale. Donna Curtis (**borrower**) signed a deed of trust (**deed of trust**) recorded against the property on April 29, 2009 to secure a note insured by the FHA for an original principal amount of $142,163.00 plus interest and granting a first lien against real property located at 9375 New Utrecht Street, Las Vegas, Nevada (**property**).[6] The borrower originally obtained the loan from Countrywide who subsequently merged into BANA.[7]

The borrower apparently defaulted on her HOA assessments. Monterey Square at Mountain's Edge Homeowners Association (**Monterey Square**), through its trustee, recorded a notice of delinquent assessment lien in the Clark County real property records on November 30, 2011, asserting a lien for $990 for delinquent assessment.[8] On March 29, 2012, Monterey Square, through its trustee, recorded a notice of default and election to sell stating $2,204 was due for

[4] SFR agreed it would travel for the deposition but only if BANA produces a copy of the original note and agrees to take the deposition where the note is located. Ex. 1, decl. of Donna Wittig.
[5] *See Bank of Am., N.A. v. SFR Invs. Pool 1, LLC et al.*, Case No. 2:15-cv-691-JCM-NJK (ECF No. 48).
[6] Compl. ¶ 12.
[7] Compl. ¶ 12.
[8] Compl. ¶ 20, ex. B.

assessments, dues, interest, fees, and collection costs.[9] On May 23, 2012, BANA tendered the sum of nine months of common assessments to Monterey Square.[10] Monterey Square, in violation of its duty of good faith, rejected BANA's tender and instead recorded a notice of trustee's sale on August 23, 2012 noticing a September 26, 2012 foreclosure sale and providing the amount due to Monterey Square was $2,869, which includes assessments, dues, interests, fees, and collection costs.[11] On September 26, 2012, Monterey Square foreclosed its lien.[12] SFR purchased the property—subject to BANA's deed of trust—at the HOA foreclosure sale for **$4,385.00**.[13]

BANA filed its complaint on June 4, 2015, asserting claims against SFR for (**1**) declaratory relief/quiet title and (**2**) injunctive relief.[14] BANA seeks a declaration Monterey Square's foreclosure of its lien could not extinguish BANA's lien because (**1**) an HOA foreclosure cannot extinguish a federally insured deed of trust, (**2**) the foreclosure sale notices were deficient under Nevada law, (**3**) BANA tendered the super-priority amount of the HOA lien, and (**4**) Monterey Square's sale of the property to SFR for $4,385.00—to the extent the sale was not subject to BANA's deed of trust—is commercially unreasonable, among other reasons.[15]

SFR filed its answer to BANA's complaint, counterclaim, and cross-claim on September 24, 2015.[16] SFR asserts counterclaims for (**1**) declaratory relief/quiet title, (**2**) a preliminary and permanent injunction, and (**3**) slander of title.[17] SFR seeks a declaration (**1**) "SFR is the title owner of the property;" (**2**) the HOA foreclosure deed "is valid and enforceable;" (**3**) the HOA foreclosure sale extinguished BANA's interest in the property, and (**4**) "SFR's rights and interest in the [p]roperty are superior to any adverse interest claimed by [BANA]."[18]

[9] Compl. ¶ 21, ex. C.
[10] Comp. ¶ 30.
[11] Compl. ¶ at 22, ex. D.
[12] Compl. ¶ 32, ex. G.
[13] Compl. ¶ 32, ex. G.
[14] Compl. ¶¶ 36-56. BANA asserts against the HOA. Compl. ¶¶ 57-70.
[15] Compl. ¶¶ 45-52.
[16] SFR Investment pool I, LLC's answer, countercl. & cross-claim (**ans.**).
[17] Ans. ¶¶ 43-64.
[18] Ans. ¶ 50.

{37721525;2}



AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

SFR served BANA with requests for admissions, interrogatories, and requests for production of documents on February 26, 2016.[19] On the same day, SFR served BANA with its notice of 30(b)(6) deposition seeking testimony on twenty topics to be provided at SFR's counsel's Las Vegas office on April 4, 2016. BANA's corporate representative(s) who would testify on these topics is located in Dallas, Texas. The discovery period ends on April 14, 2016.

Counsel for BANA and counsel for SFR conferred on March 4, 2016 through March 7, 2016. Counsel for BANA and counsel for SFR made a sincere attempt to resolve the matters addressed in this motion but have been unable to do so.[20]

## III. MEMORANDUM AND POINTS OF AUTHORITIES.

### A. Legal Standard

The court may issue an order to protect a party from annoyance, embarrassment, oppression, undue burden, or expense upon motion filed by a party from whom discovery is sought and a showing of good cause. Fed. R. Civ. P. 26(c)(1). The party moving for the protective order bears the burden of persuasion, but, if a discovery request is overly broad on its face or "when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *See, e.g., Desert Valley Painting & Drywall, Inc. v. United States*, No. 2:10-cv-490, 2012 WL 4792913, at *2 (D. Nev. Oct. 9, 2012).

Even if information sought through discovery is relevant, a district court may limit discovery. *See Kleen Prod. LLC v. Packaging Corp. of Am.*, No. 10-C-5711, 2012 WL 4498465, at *9-11 (N.D. Ill. Sept. 28, 2012). *Adair v. EQT Prod. Co.*, No. 1:10-cv-37, 2015 WL 505650, at *4 (W.D. Va. Feb. 6, 2015). A district court "must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P.

[19] A true and correct copy of SFR's interrogatories to BANA (**interrog.**) is attached as exhibit 2 to this motion and a true and correct copy of SFR's requests for admission to BANA (**admis.**) is attached as exhibit 3 to this motion.

[20] Ex. 1, decl. of Donna M. Wittig.

26(b)(2)(C)(i); *see also Turner v. The Paul Revere Life Ins. Co.*, No. 2:14-cv-1205, 2015 WL 5097805, at *3 (D. Nev. Aug. 28, 2015).

If relevant information is available from multiple sources, a court may limit discovery "to the least burdensome source, thus empowering courts to control litigation costs and promote efficiency in accordance with Rule 1." *Kleen*, 2012 WL 4498465, at *11, *citing* The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 296-97 (2010).[21] A prime example of a less burdensome means of discovery is the use of written discovery, where appropriate, rather than deposition discovery. *See United States of Am. ex rel. Fago v. M & T Mortg. Co.*, 235 F.R.D. 11, 22, 25 (D.C. Cir. 2006) ("I can see no added benefit to compelling the same information through a Rule 30(b)(6) deposition because, like Rule 30(b)(6) deposition testimony, an interrogatory can be served and answered by a corporation via its officers and agents.").

The United States Supreme Court recently amended Federal Rule of Civil Procedure 26(b)(1) to redefine **and limit** the scope of discovery consistent with controlling the costs of litigation.[22] Under Rule 26(b)(1) a party may obtain discovery regarding any:

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

---

[21] *See also* American Bar Ass'n, *A Simpler Solution to Federal Rule 30(b)(6) Depositions*, http://apps.americanbar.org/litigation/committees/commercial/articles/winter2013-0213-a-simpler-solution-to-federal-rule-30b6-depositions.html (Feb. 27, 2013) (noting "Both the federal rules and the above-cited cases recognize the need to manage discovery in a way that minimizes inconvenience, burden, and expense imposed on party litigants. With regard to corporate parties, one such way is by limiting the use of Rule 30(b)(6) depositions to situations in which such depositions are truly useful and unavoidable. Indeed, **Rule 26 mandates that such limitations be imposed where appropriate.**") These limitations are strengthened even more through the 2015 amendments to the Federal Rules of Civil Procedure.

[22] The Committee on Rules of the Practice and Procedure of the Judicial Conference of the United States issued a memorandum regarding the proposed amendments to the Federal Rules of Civil Procedure. In the report the committee states "a principal conclusion of the Duke Conference was that discovery in civil litigation would more often achieve the goals of Rule 1 through an increased emphasis on proportionality." The Committee Rules of Practice and Procedure of the Judicial Conference of the United States, Memorandum re: Proposed Amendments to the Federal Rules of Civil Procedure, Rules App'x B-6. The report further references several studies in which it was found attorneys thought discovery costs are disproportionately high in small cases. *Id.* at Rules App'x B-6-7. The Committee Notes on Rules—2015 Amendment states

> the previous amendments have not had their desired effect [regarding active judicial use of subdivision (b)(2) to control excessive discovery]. The Committee's purpose in returning the proportionality factors to Rule 26(b)(1) is to make them an explicit component of the scope of discovery, requiring parties and courts alike to consider them when pursuing discovery and resolving discovery disputes.

*Id.*

> nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[23]

Fed. R. Civ. P. 26(b)(1); *see Turner*, 2015 WL 5097805, at *1. It is not sufficient that information sought is relevant, it must also be proportional to the needs of the case. *Turner*, 2015 WL 5097805, at *3. The Committee Notes to the 2015 amendments emphasize the purpose of the change is to require all parties, including the court, to consider proportionality when considering discovery. The Committee Note states "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26.

As recently explained by Judge Leen, the rules have been amended to address the following: (**1**) "the need to prevent discovery from becoming a war of attrition or as a device to coerce a party, whether financially weak or affluent," (**2**) "to promote judicial limitation on the amount of discovery on a case-by-case basis to avoid abuse or overuse of discovery through the concept of proportionality," (**3**) "encourage greater cooperation," (**4**) "focus discovery on what is truly needed to resolve cases," and (**5**) "<u>**eliminate unnecessary or wasteful discovery**</u>." *See Roberts v. Clark Cty. School Dist.*, No., 2:15-cv-388-JAD-PAL, 2016 WL 123320, *6-7 --F.R.D.-- ( D. Nev. Jan. 11, 2016) *Id.* at *6-7 (emphasis added). Per Chief Justice Robert's year-end report, the fundamental purpose of 2015 amendments was for "lawyers [to] size and shape their discovery requests to the requisites of a case." *Id.* at 7.

. . .

. . .

[23] Federal Rule of Civil Procedure 26(b)(1) previously stated:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**B. BANA is entitled to a protective order on all deposition topics.**

BANA is entitled to a protective order regarding SFR's 30(b)(6) deposition notice because the deposition topics are neither relevant nor proportional to the needs of the case. *See Turner*, 2015 WL 5097805; *see also Brown*, 2013 WL 6844760, at *3. This case presents a simple issue—did the HOA's foreclosure of its lien extinguish BANA's interest when BANA had tendered the super-priority amount of the HOA lien prior to the HOA foreclosure sale. Given the simple legal issue and few factual issues this case presents, SFR's 30(b)(6) deposition topics are not relevant—much less proportional—to the needs of this case.

Any topics that are arguably relevant are more appropriately, efficiently and proportionately dealt with through written discovery, much, if not all of which is already pending.[24] *See United States of Am. ex rel. Fago v. M & T Mortg. Co.*, 235 F.R.D. 11, 22, 25 (D.C. Cir. 2006) ("I can see no added benefit to compelling the same information through a Rule 30(b)(6) deposition because, like Rule 30(b)(6) deposition testimony, an interrogatory can be served and answered by a corporation via its officers and agents."). BANA is entitled to protection because SFR's deposition topics are unduly cumulative of written discovery and not proportional to the needs of the case. The Court should allow BANA to respond to discovery in the least burdensome manner, in this case written discovery. Accordingly, protection should be granted on all topics.

…

…

…

…

…

[24] *See also* American Bar Ass'n, *A Simpler Solution to Federal Rule 30(b)(6) Depositions*, http://apps.americanbar.org/litigation/committees/commercial/articles/winter2013-0213-a-simpler-solution-to-federal-rule-30b6-depositions.html (Feb. 27, 2013) (noting "Both the federal rules and the above-cited cases recognize the need to manage discovery in a way that minimizes inconvenience, burden, and expense imposed on party litigants. With regard to corporate parties, one such way is by limiting the use of Rule 30(b)(6) depositions to situations in which such depositions are truly useful and unavoidable. Indeed, **Rule 26 mandates that such limitations be imposed where appropriate.**") These limitations are strengthened even more through the 2015 amendments to the Federal Rules of Civil Procedure.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**C. Each of SFR's deposition topics is either unduly cumulative of SFR's written discovery requests or not proportional to the needs of this case.**

**__Topic One__: "The manner in which BANA obtained actual notice that the Association was enforcing it[s] lien against the Property."**

This request does not require testimony from a witness. SFR previously agreed that written discovery responses were sufficient.[25] Even thought it refuses to agree in this case, it still seeks this exact information through its interrogatories 2 – 4[26] and its requests for admission 2 and 8.[27] In the interrogatories, SFR requests BANA state whether it knew Monterey Square was enforcing its lien before the date of the HOA sale, and if so, to identify each time, how, when and by what methods it obtained notice.[28] BANA is entitled to protection for topic one because it is cumulative of SFR's written discovery requests. *See* Fed. R. Civ. P. 26(b)(2). It is less burdensome, less expensive, and more convenient for BANA to respond to SFR's requests for admission and interrogatories on this topic. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Requiring BANA to produce a corporate representative on this topic when SFR seeks this information through multiple discovery devises is not proportional and represents an overuse of discovery. *See Roberts*, 2016 WL 123320, *6-7.

**__Topic Two__: "The transaction(s) through which BANA and/or investor on the loan secured by the First Deed of Trust obtained an interest in the Property, including the type of transaction, date of the transaction, interest obtained and how the witness determined such information. To the extent BANA and/or the investor on the loan secured by the First Deed of Trust is alleging that the price paid at the Association foreclosure sale was not commercially reasonable, this area of inquiry also includes the price the Trust paid to obtain its interest in the Property."[29]**

---

[25] *See Bank of Am., N.A. v. SFR Invs. Pool I, LLC et al.*, No. 2:15-cv-1097-GMN-NJK, BANA's renewed emergency mot. for protective order (ECF No. 24), exs. 7, 10 (dep. topic 1).
[26] *See* ex. 2, interrog. nos. 2-4.
[27] *See* ex. 3, request for admis. nos. 2, 8.
[28] *See* ex. 2, interrog. nos. 2-3.
[29] SFR attempts to address two separate issues in one topic. This topic seeks (**1**) BANA's acquisition of the note and deed of trust and (**2**) BANA's position as it relates to the commercial reasonableness of the sale.

{37721525;2}

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

This is another topic that SFR previously agreed to withdraw.[30] This case concerns whether the HOA foreclosure sale extinguished BANA's deed of trust. The terms of the transaction that led to BANA's interest has no bearing on this issue. Regardless, this information is confidential and proprietary. *See* 15 U.S.C. § 6801; 16 C.F.R. § 313(n)(1).

SFR appears to claim this information is relevant because BANA argues the price SFR paid to "purchase" the property at the foreclosure sale was commercially unreasonable. Under Nevada law "a wide discrepancy between the sale price and the *value of the collateral* compels close scrutiny into the commercial reasonableness of the sale." *Levers v. Rio King Land & Inv. Co.*, 93 Nev. 95, 98, 560 P.2d 917, 920 (1977) (emphasis added); *see also Iama Corp. v. Wham*, 99 Nev. 730, 736, 669 P.2d 1076, 1079 (1983); *Jones v. Bank of Nevada*, 91 Nev. 368, 368 (Nev. 1975). The price BANA paid to purchase its interest—which was not a purchase of the property, it holds a lien against the property—has absolutely no bearing as to whether the foreclosure sale was commercially reasonable. Under *Shadow Wood*, the one and only relevant inquiry is fair market value of the property *at the time of the sale*. *See Shadow* Wood, 2016 WL 347979, at *6, 10 n.3. The amount BANA paid for its interest in the deed of trust is irrelevant to the analysis.

**<u>Topic Three</u>: "BANA's standing and authority to enforce the First Deed of Trust and underlying promissory note including the location of the original wet-ink signature promissory note, and indorsements or allonges thereto and all recorded and unrecorded assignments contained in the collateral file."**

BANA's authority to enforce the promissory note is confidential and irrelevant. *See* 15 U.S.C. § 6801, *et seq*. This is not a judicial foreclosure action or a deficiency action. This case concerns only whether the deed of trust survived the foreclosure sale. The promissory note represents a separate agreement with the borrower that is not recorded against the property. That agreement has no impact on whether the HOA sale extinguished the deed of trust. *See 1597 Ashfield*

[30] *See Bank of Am., N.A. v. SFR Invs. Pool I, LLC et al.*, No. 2:15-cv-1097-GMN-NJK, BANA's renewed emergency mot. for protective order (ECF No. 24), exs. 7, 10 (dep. topic 4).

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

*Valley Trust v. Federal Nat'l Mortg. Ass'n Sys.*, No. 2:14-cv-2123, 2015 WL 4581220, at *7-8 (D. Nev. July 28, 2015).

Regardless, BANA's response to SFR's interrogatories will once again preclude a deposition on this topic. SFR requests BANA describe the documents and transaction which give BANA authority to enforce the note and requests BANA identify its interest in the deed of trust.[31] BANA not only intends to provide written discovery responses on this topic but also has produced the recorded deed of trust and assignments.[32] The geographical location of the collateral file is irrelevant, and witness testimony is not required to reiterate what BANA has or will provide in written discovery. Requiring BANA to produce a corporate representative to travel to Nevada to testify regarding the location and contents of the collateral and simply regurgitate its written discovery responses is disproportionate to the needs of this case. *See Roberts*, 2016 WL 123320, at *6-7.

**<u>Topic Four</u>: "The identity of any other entities of which BANA is aware that, currently and/or at the time of the Association foreclosure sale, claim(ed) an interest in the First Deed of Trust and/or the underlying promissory note and the transaction(s) through which that entity obtained an interest."**

SFR seeks this exact same information through its interrogatories 17-19, which request BANA "identify any other entity or person of which you are aware that currently claims an interest in the promissory note secured by the First Deed of Trust"[33], "identify any other entity or person of which you are aware the currently claims an interest in the First Deed of Trust"[34], and "provide a detailed list of the previous entitles/persons of which you are aware that have claimed an interest in the First Deed of Trust or underlying promissory note in the past including dates and the type of interests." SFR's deposition topic is identical verbatim to its written discovery requests and can be completely addressed in response to the written discovery. BANA is entitled to protection because

---

[31] Ex. 2, interrog. nos. 15, 16.
[32] Ex. 4, req. for produc. no. 1. The note is not relevant for the reasons discussed *supra*.
[33] *See* ex. 2, interrog. no. 17.
[34] *See* ex. 2, interrog. no. 18.

this topic is: (**1**) duplicative of, and more efficiently addressed, through written discovery, and (**2**) not proportional to the needs of the case—BANA's awareness of whether other entities claim an interest the deed of trust and promissory note will not impact on the issues in this case. *See* Fed. R. Civ. P. 26(b)(1).

**__Topic Five__: "The identity of any entity of which BANA is aware that currently insures or claims a contractual interest in the First Deed of Trust and/or underlying promissory note."**

As discussed in topic three, the note is not relevant to this action. Even if it was, the information can be obtained through written discovery. In fact, in each of the prior eight affected cases,[35] SFR served an interrogatory requesting this precise information.

BANA's awareness of any entity that insures or claims an interest in the note or deed of trust is not relevant. But, BANA intends to identity other entities who claim an interest in the deed of trust and note, of which it is aware, in response to SFR's interrogatories. This topic does not address "what is truly needed to resolve [this] case[]." *See Roberts*, 2016 WL 123320, at *6-7. BANA should not be required to travel to Las Vegas on this topic.

**__Topic Six__: "Provisions of any pooling and servicing agreement and/or servicing guidelines applicable to BANA's security interest in the Property that mention or are applicable to associations, association liens or association foreclosures."**

This deposition topic is another replica of SFR's written discovery requests. SFR's interrogatory 7 asks BANA to "identify provisions of any pooling and servicing agreement and/or servicing guidelines applicable to your security interest in the Property that mention or are applicable to associations, association liens or association foreclosures." SFR's interrogatory seeks information regarding pooling and servicing agreements even broader than SFR's deposition topic.[36] BANA is entitled to protection because this deposition topic is cumulative of SFR's written discovery request and is not proportional to the needs of the case. Moreover, requiring a witness to review, memorize,

[35] *See e.g. Constantino*, BANA's renewed mot. for protective order (doc. 37-7), ex. 7, at 9, interrog. nos. 17-18.
[36] SFR's deposition topic covers a more limited time frame than SFR's interrogatory.



AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

and regurgitate a pooling and servicing agreement, which is hundreds of pages, is an unreasonable expectation. To the extent relevant, BANA intends to produce any applicable pooling and servicing agreement and/or applicable servicing guidelines in response to written discovery, subject to relevant assertions of privilege and confidentiality and related protection.

**<u>Topic Seven</u>: "All communications between BANA and/or its agents and any the parties to this litigation, including the Borrower that mention Association's lien, Association assessments and/or Association foreclosures as it relates to the property."**

Aside from the disproportionate and cumulative nature of the topic, BANA seeks protection from this topic because it is overly broad as it is not tied to the parties' claims or defenses, and would require BANA to review its file dating back to 2009 for any communication that references the lien, and then regurgitate each of those communications at the deposition. To the extent SFR seeks testimony regarding any communications between BANA and the borrower, these are confidential by operation of federal law.[37] *See* 15 U.S.C. § 6801, *et seq*. Even if discoverable, the only relevant communications in this case are: (**1**) any foreclosure notices forward by the HOA to BANA; and (**2**) any communications with the Monterey Square in furtherance of BANA's efforts to tender. Importantly, as SFR is well aware, BANA hired outside counsel, Miles Bauer, to correspond with Monterey Square and tender. The foreclosure notices received by BANA and any communications between Miles Bauer and BANA can be identified when BANA responds to SFR's interrogatory 3 and 6 (seeking communications related to the foreclosure between BANA and Monterey Square), interrogatories 10-12 (seeking information related to BANA's efforts to tender and make payments to the association), and interrogatory 20 (seeking any communications, including communications with the borrower mentioning the borrower's obligation to pay assessments to the HOA).[38] Requiring a 30(b)(6) deposition on this topic is not proportional to the needs of the case when the information will be provided through written discovery.

---

[37] SFR also seeks this information through request for interrogatory number 20.

[38] *See infra* § II(C)(2) for a discussion of why a court should protect a party when the non-moving party seeks the same information through multiple discovery devices. To require a party to respond to multiple types of discovery requests on the same issue constitutes an undue burden and is unnecessarily cumulative.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**<u>Topic Eight</u>: "All communications referencing the Property between BANA and/or its agents and any association, association's management company, association's collection company, or association's foreclosure agent."**

BANA is entitled to protection on this topic for the same reasons immediately above. This topic seeks "all communications" and is not tied to the communications that are relevant to this case, *i.e.* the HOA foreclosure sale. This request is also a mere replica of SFR's interrogatory 6; which seeks "all communications between you and the Association, Association's management company and/or the Association's collection company specific to the Property. . ."[39] BANA is entitled to protection from SFR's overuse of discovery on this topic. *See Roberts v. Clark Cty. School Dist.*, No., 2:15-cv-388-JAD-PAL, 2016 WL 123320, *6-7.

**<u>Topic Nine</u>: "Foreclosure notices referencing an association lien on the Property received by BANA, its predecessors in interest, or its agents, including the trustee of the first deed of trust."**

SFR seeks this same information through interrogatories 2-5 and requests for production 4, 12, 13, 16 and 17. BANA intends to produce all notices it received and identify when any were received in its interrogatory responses. This deposition topic is cumulative of SFR's written discovery. Fed. R. Civ. P. 26(b)(2)(C)(i); *see Turner*, 2015 WL 5097805, at *3.

**<u>Topic Ten</u>: "Any and all actions BANA alleges it or its predecessors in interest took to protect its interest in the First Deed of Trust after learning the Association was enforcing its lien against the Property."**

This deposition topic is yet another replica of SFR's interrogatories. Interrogatory number 4 requests BANA "describe any action you or your predecessors in interest took relating to the Association lien, if any, after receiving notice that the Association was enforcing its lien against the

---

[39] Ex. 2, interrog. no. 6.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

Property." BANA's response to this interrogatory will obviate any need for live testimony.[40] A deposition on this topic would be unnecessary and wasteful. *See Roberts*, 2016 WL 123320, at *6-7.

**Topic Eleven: "The date, amount, and manner of any monetary payments made by BANA or its agents to the Association, the Association's management company, Association's foreclosure agent and/or the Association's collection company relating to the Association's lien on the property . . ."**

SFR again seeks this same information through written discovery. SFR asks BANA to "provide a detailed list of each and every monetary payment made by you to the Association . . . For each payment, please include the date of the payment, amount of payment, the name and address of the person/entity to whom the payment was made, the method and manner the payment was made, the name of the person who made the payment, and whether the payment was accepted or rejected."[41] SFR's deposition topic is identical to interrogatory 10; the response to which will provide the information related to this request. SFR's deposition topic is unduly duplicative. *See Turner*, 2015 WL 5097805, at *3

Further, as SFR is well aware, BANA retained counsel, Miles Bauer, to correspond with Monterey Square and tender payment on the super-priority lien. BANA produced an affidavit from Miles Bauer that provides information responsive to this request; including documents relating to (**1**) Miles Bauer's request the HOA identify the nine-months of common assessments pre-dating the notice of default, (**2**) a letter from Alessi refusing to provide the amount due for the nine-months of common assessments and stating the super-priority is not triggered until the beneficiary under the first deed of trust forecloses, (**3**) the check tendered by Miles Bauer to the HOA to cure the nine months of assessments, and (**4**) the confirmation from the HOA it received and ***accepted*** Miles Bauer's tender. To the extent SFR has questions about Miles Bauer's tender, those questions should, at least in the first instance, be posed to Miles Bauer.

---

[40] Ex. 2, interrog. no. 4.
[41] *See* ex. 2, interrog. no. 10.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**<u>Topic Twelve</u>: "To the extent BANA alleges that any payment it made towards the amounts included in the Association's lien on the Property was rejected by the Association . . . the facts and circumstances surrounding any such rejection."**

As stated immediately above, BANA is producing all information in its possession about Miles Bauer's attempt to pay the super-priority lien, including the HOA's response. To the extent SFR has additional questions, BANA will assist in presenting Miles Bauer for deposition.

**<u>Topic Thirteen</u>: "If applicable, all communications between BANA and the investor of the loan secured by the First Deed of Trust that mention the Association's lien, Association assessments and/or Association foreclosure as it relates to the Property."**

SFR's interrogatory 20 seeks this same information through a less burdensome, more convenient, and less expensive source. BANA should not be compelled to travel to Las Vegas to testify on a deposition topic when information responsive to this topic, if any, will already be provided in response to this interrogatory. *See Turner*, 2015 WL 5097805, at *3; *Roberts*, 2016 WL 123320, at *6-7.

Documents responsive to this topic, if any, will be produced in response to SFR's written discovery responses. BANA's 30(b)(6) witness would testify solely based on his/her review of the file, so identification and production of these documents, if any, is the equivalent, if not superior source. Requiring BANA's 30(b)(6) witness to travel to Las Vegas and memorize what can be produced in discovery and identified in response to interrogatories is not proportional to the needs of this case.

**<u>Topic Fourteen</u>: "Any proceedings to foreclose on the First Deed of Trust."**

This topic is not relevant and information related to it is equally available to SFR. It is undisputed—in the pleadings and as a matter of public record—BANA did not foreclose its deed of trust. To the extent SFR intended something more, this topic lacks particularity. At issue is whether the HOA's foreclosure of its lien extinguished the senior deed of trust. Whether BANA contemplated foreclosure without actually proceeding is outside the scope of discovery as it will not

{37721525;2}

resolve the issues. The burden in producing a 30(b)(6) witness to testify regarding this topic outweighs any likely benefits. Fed. R. Civ. P. 26(b)(1); *Turner*, 2015 WL 5097805, at *3.

**Topic Fifteen: "All internal communications that mention the Association's lien, delinquent Association assessments and/or Association foreclosure as it relates to the Property . . . For privileged communications, please provide testimony regarding the date of any such communication and the parties involved."**

This topic is overly broad, irrelevant, lacks particularity, and disproportionate to the needs of this case. It is not possible that every note, record, or communication that so much as mentions the association's lien, assessments, or foreclosure is relevant or proportional to the issues in this case. At issue is whether the HOA's foreclosure of its lien extinguished BANA's interest. Internal communications mentioning the association's lien are not proportional to this case because they will not assist in resolving the case. *See* Fed. R. Civ. P. 26(b)(1). Even if some particularized topic is relevant, it is precisely the type of thing that can be addressed in written interrogatories and document production.

**Topic Sixteen: "BANA's practices, policies and procedures applicable to the Property for handling association liens."**

SFR requests this same information through interrogatory number 9—"identify any and all of your practices, policies or procedures applicable to the Property for handling homeowners association liens."[42] BANA is entitled to protection from this deposition topic because it seeks the same information through a less burdensome, less expensive, and more convenient source.

SFR is well aware of BANA's procedures because it has told SFR before: its procedure was to hire counsel to handle the lien.[43] BANA can repeat this response in its interrogatories, produce the written policy (as it has before) under a protective order, and SFR can avail itself of the dozens of deposition transcripts on this topic if it thinks the written discovery responses are insufficient.

---

[42] *See* ex. 2, interrog. no. 8. This deposition topic also seeks privileged information. SFR has not made a substantial showing to discover this information.

[43] *See e.g.* ex. 5, deposition excepts of BANA's 30(b)(6) witness in *Nationstar Mortg., LLC v. Aurora Canyon Homeowners Ass'n et al.*, No. 2:15-cv-1308-MMD-NJK.



AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**<u>Topic Seventeen</u>: "BANA's factual basis for its allegation that the First Deed of Trust was not extinguished by the association foreclosure sale."**

BANA seeks protection from this topic as it is overly broad for a 30(b)(6) deposition and seeks testimony regarding legal conclusions. *See Mariner Energy Inc. v. Devon Energy Prod. Co.*, 690 F. Supp. 2d 558, n.2 (S.D. Tex. 2010). Asking a non-attorney lay witness to memorize all case facts that may be used at the time of trial, and tie those facts to the applicable legal theories, is burdensome and unrealistic. This is precisely the type of discovery that is most appropriate for a contention interrogatory that allows BANA to provide a thorough and meaningful response.[44] *See McCormick-Morgan, Inc. v. Teledyne Indus, Inc.*, 134 F.R.D. 275, 286-8, *overruled on other grounds* 765 F. Supp. 611 (N.D. Cal. 1991) (holding the most appropriate means for discovering a party's contentions was through an interrogatory, not a deposition); *see also TV Interactive Data Corp. v. Sony Corp.*, No. C 10-475, 2012 WL 1413368, at *2-3 (N.D. Cal. April 23, 2012); *see ViaSat, Inv. v. Space Sys./Loral*, 2013 WL 3467413, at * 6 (S.D. Cal July 10, 2013) ("Case law suggests that a Rule 30(b)(6) deposition is inefficient as opposed to ROGs.").

**<u>Topic Eighteen</u>: "BANA's factual basis for its allegation, if any, that SFR is not a bona fide purchaser for value."**

BANA seeks protection from this topic as it is overly broad for a 30(b)(6) deposition, seeks testimony regarding legal conclusions and improperly attempts to shift one of its burdens to BANA. *See Mariner*, 690 F. Supp. 2d at n.2. It is SFR's burden to establish it is a bona fide purchaser, and it is SFR who possesses the information as to whether it is a bona fide purchaser—not BANA. *See Freedom Mortg. Corp. v. Trovare Homeowners Assoc.*, No. 2:11-cv-1403, 2014 WL 712664, at *4 (D. Nev. Feb. 21, 2014), *rev'd on other grounds*, 613 Fed. Appx. 668 (9th Cir. 2015). Similar to BANA's objection to topic 17, asking a non-attorney lay witness to memorize all case facts that may be used at the time of trial, and tie those facts to the applicable legal theories—whether SFR is a

---

[44] SFR's deposition topics 18 - 20 also seek to discover BANA's contentions through an inappropriate use of deposition topics. BANA should not be required to testify regarding any contention-type deposition topic.

bona fide purchaser—is burdensome and unrealistic. It is precisely the type of discovery most appropriate for a contention interrogatory that allows BANA to provide a thorough and meaningful response, including reviewing any information available to counsel regarding SFR's position it is a bona fide purchaser. *See McCormick-Morgan*, 134 F.R.D. at 286-68; *see also Interactive*, 2012 WL 1413368, at *2-3.

**<u>Topic Nineteen</u>: "BANA's factual basis for its allegation, if any, that the circumstances surrounding the Association foreclosure sale constitutes fraud, oppression or unfairness."**

BANA seeks protection from this topic as it is overly broad for a 30(b)(6) deposition and seeks testimony regarding legal conclusions. *See Mariner*, 690 F. Supp. 2d at n.2. This topic seeks to address *Shadow Wood*, in which the court noted that a foreclosure sale may be set aside if the sale is for an inadequate price and there is a showing "fraud, unfairness, or oppression." *Shadow Wood*, 132 Nev. Adv. Op. 5.[45] BANA should be protected from providing deposition testimony on this topic for the same reasons stated directly above regarding topic 19.

**<u>Topic Twenty</u>: "To the extent BANA denies having actual notice of the Association foreclosure proceedings *before* the Association foreclosure sale, the creation and retention of all documents mentioning the Association lien, Association assessments and/or Association foreclosure as it relates to BANA's security interest in the Property . . .**

BANA intends its written discovery responses will identify all foreclosure notices it received related to the foreclosure proceedings before the sale. BANA does not intend to deny it did not receive any foreclosure notices. Information related to this topic can be provided through a less burdensome, less expensive, and more convenient source. BANA is entitled to protection.

. . .

. . .

. . .

[45] The Nevada Supreme Court also indicates a showing of fraud, unfairness, or oppression is not required if the property is sold for a **<u>grossly</u>** inadequate price. *Shadow Wood*, 132 Nev. Adv. Op. 5.

{37721525;2}



AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**C. Any deposition should be by telephone, videoconference, or in Dallas, Texas.**

1. Dallas is the presumptive location for the deposition.

To the extent the Court is inclined to let the deposition proceed, BANA's witness should not be compelled to travel to Nevada for a deposition that is at best marginally useful in comparison to the needs of this case.

A party may set the location for an opposing party's deposition. *See* Fed. R. Civ. P. 30(b)(1); *see S.E.C. v. Banc de Binary*, No. 2:13-cv-993, 2014 WL 1030862, at *3 (D. Nev. March 14, 2014). But the party's "discretion to choose a location is limited[,]" and there is a rebuttable presumption the deposition of a corporate representative should occur where the corporation maintains its principal place of business. *Banc de Binary*, 2014 WL 1030862, at *3. This presumption is strengthened if the corporation is the defendant but does not change the general rule a corporate representative's deposition should occur where it has its principal place of business. *See Banc de Binary*, 2014 WL 1030862, at *3; *see Morin v. Nationwide Federal Credit Union*, 229 F.R.D. 362, 363 (D. Conn. 2005) (noting a presumption exists to hold a corporate representative's deposition in its principal place of business "especially when . . . the corporation is the defendant. . . This presumption is based on the concept that *it is the plaintiff who brings the lawsuit and who exercises the first choice as to the forum*.").

BANA was required to file this action in Nevada because that is where the property is located—not because that is where BANA is located. *See* compl. ¶ 7. Venue is proper in "(1) a judicial district in which any defendant resides; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any SFR is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Defendants Monterey Square and SFR are Nevada entities, and the property is located in Nevada. Compl. ¶¶ 2-3. BANA did not have discretion as to where to file this action.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

If a party notices a corporate representative's deposition for a location other than its principal place of business, a court may issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense upon a motion filed by a party from whom discovery is sought and a finding of good cause. Fed. R. Civ. P. 26(c); *see Cadent, Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005); *see Payton*, 148 F.R.D. at 668. The party moving for the protective order bears the burden of establishing good cause. *Cadent*, 232 F.R.D. at 629. Good cause can be shown with the presumption the deposition of a Texas representative of a Texas[46] corporation should proceed in Texas, not Nevada. *See Morin*, 229 F.R.D. at 363. If there is no place that appears convenient for the parties, courts in the Ninth Circuit apply a five-factor test, known as the *Cadent* factors, to determine where a deposition should occur. *See Banc de Binary*, 2014 WL 1030862, at *3. These factors are:

> (**1**) the location of counsel for the parties in the forum district; (**2**) the number of corporate representatives a party is seeking to depose; (**3**) the likelihood of significant discovery disputes arising which would necessitate resolution by the forum court; (**4**) whether the persons sought to be deposed often engage in travel for business purposes; and (**5**) the equities with regard to the nature of the claim and the parties' relationship.

*Id.*

2. Equities favor moving the deposition location.

Equities weigh in favor of holding BANA's corporate representative deposition in Dallas based on SFR's choice to "vigorously litigate" its case, making the opposing party incur significant fees. *Stonebreaker*, 820 F.Supp.2d at 1100. In considering the equities with regard to the nature of the claim and the parties' relationship, "courts often look at whether the time, expense, and inconvenience of travel present special hardship for the deponent and the ability of the court to intervene should disputes arise." *Motion Games*, 2014 WL 5306961, at *3 (E.D. Tex Oct. 16, 2014)

---

46 BANA's principal place of business is in North Carolina. BANA's corporate representatives that would testify regarding HOA issues and issues related to this case are located in Texas. Further, there is no requirement a corporate representative's deposition can only occur where it has its principal place of business. Because BANA's HOA activities are primarily located in Dallas, this motion treats Dallas as BANA's principal place of business.

{37721525;2}

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

(denying motion to compel to produce the corporate representative in United States rather than corporate representative's principal place of business in Japan).

Equity clearly establishes BANA's corporate representative should not be disrupted from over a day of travel to conduct a one hour deposition in Nevada when she could participate in the same deposition in Dallas and resume her normal daily job activities later that day.[47] SFR seeks to depose BANA's corporate representative on many of the same topics for which it seeks the **exact same** written discovery and/or are outside the scope of discovery.[48] BANA should not be forced to lose an employee's job productivity for topics such as these. The Federal Rules of Civil Procedure were amended to prevent this type of burden and limit discovery only to that proportional to the needs of the case.

BANA has hundreds of properties impacted by HOA foreclosures, many of which are already in litigation. If BANA were compelled to bring its witnesses to Nevada in every HOA case—to testify on topics that are at best marginally relevant—it would incur hundreds of thousands, if not millions, of dollars in deposition fees alone. Its employees would constantly be required to travel to Nevada, on a continual basis, given the number of cases and depositions to be completed. The travel time would be hours more than the depositions themselves.[49] Dallas is at least five hours' worth of flight time round trip, exclusive of waiting in airports.[50] All prior BANA depositions—which SFR has taken in Dallas—have averaged an hour.[51] It makes little sense to require a witness to travel hours for a one-hour deposition of such minimal significance.

If BANA were compelled to travel to Nevada for the hundreds of pending HOA cases it is currently litigating, depositions could be used to burden BANA, and coerce it into forgoing its legal rights to avoid the burden and expense of deposition discovery. This is precisely the type of harm that the recent "proportionality" amendments were designed to avoid. This burden is also

[47] *See* ex. 1, decl. of Donna Wittig discussing the time associated with depositions in cases involving similar issues.
[48] *See supra* § III(C).
[49] *See* ex. 1, decl. of Donna Wittig.
[50] Ex. 1, decl. of Donna Wittig.
[51] Ex. 1, decl. of Donna Wittig.

{37721525;2}

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

unnecessary where BANA has provided SFR with alternatives. SFR can take a telephonic deposition, or can use the video conferencing facilities at BANA's counsel's Las Vegas and Dallas offices at no charge. SFR would be able to conduct the deposition in its entirety by video without requiring the witness or SFR to travel. *See Gee v. Suntrust Mortg., Inc.*, No. 10-cv-01509, 2011 WL 5597124, at *3 (N.D. Cal. Nov. 15, 2011); *see also One Gulfstream G-V Jet Aircraft*, 304 F.R.D. at 18 (holding the deponent's "deposition will cover only a limited set of topics, which combined with the extensive travel and cost at issue, is exactly when videoconference depositions are most useful."). If it is important enough for SFR to take the deposition face-to-face, it can absorb the burden itself by traveling to Dallas to take the deposition, assuming any of the topics are permissible.

3. The remaining factors do not negate good cause.

The remaining factors courts use to determine location do not overcome BANA's ability to show good cause. It is true that counsel for both parties are already in Nevada, but this is the least significant factor in determining whether a court should grant a protective order. *Tailift USA, Inc. v. Tailift Co., Ltd.*, No. 3:03-cv-0196, 2004 WL 722244, at *2 (N.D. Tex. March 26, 2004) ("The convenience of counsel is less compelling than any hardship to the witnesses."). SFR knew it was inviting a lawsuit with the lender when it purchased these properties at HOA sale.[52] A court may also consider whether either party has counsel at its principal place of business. *Id.* Counsel for BANA is located in Las Vegas but also maintains an office in Dallas, Texas.[53] These facilities are available for use by SFR to take the depositions, at no charge.

As to the number of witness required, SFR seeks testimony on twenty topics, which either requires multiple witnesses, or substantial preparation time with a single witness to prepare her for topics outside of her personal knowledge.[54] This is yet another reason to grant a protective order. *See, e.g., Stonebreaker v. Guardian Life Ins. Co.*, 820 F. Supp. 2d 1096, 1099 (S.D. Cal 2011); *Tailift*, 2004 WL 722244, at *3. Although BANA intends to reduce its costs and burden by

[52] Ex. 6, dep. excerpts from SFR's 30(b)(6) deposition of Christopher J. Hardin in *SFR Investments Pool 1, LLC vs. JPMorgan Chase Bank*, No. A-13-684630-C, filed in the Eighth Judicial District Court of Clark County, Nevada at 27.
[53] *See* http://www.akerman.com/locations/index.asp (last visited on March 18, 2016).
[54] *See* ex. 7, SFR's notice of 30(b)(6) deposition of Bank of America, N.A.

{37721525;2}

producing one witness, this means BANA's counsel and the witness will need to spend time preparing for the deposition, which means additional time that the witness must be in Nevada if compelled to travel for the deposition.

Discovery disputes only require the court to order the deposition in the forum location if there have been prior, specific discovery disputes between the parties, the court will be unable to intervene during the deposition if it occurs in the location of the corporate representative, <u>and</u> the court will be unable to resolve the discovery disputes before or after the deposition. *Motion Games*, 2014 WL 5306961, at *4; *United States v. One Gulfstream G-V Jet Aircraft*, 304 F.R.D. 10, 15 (D.C.Cir. 2014); *Tailift*, 2004 WL 722244, at *3. None of these factors are present here. BANA does not anticipate significant discovery disputes arising during the deposition of its corporate representative—none have yet, and "the mere possibility of such disputes does not necessarily weigh in favor of conducting the deposition [in the forum location.]"[55] This is also not a case where the parties are many time zones apart—so should the need arise, the parties may consult the court by telephone. *Motion Games*, 2014 WL 5306961, at *3 (noting even a fourteen-hour time difference between the location of the deponent and the forum state did not require the court deny a protective order finding "the time difference is not sufficient to justify a departure from the general rule [a corporate representative's deposition should occur where its principal office is located].").

BANA's corporate representative has no other reason to travel to Nevada, other than for the deposition, which imposes an inherent burden on the bank. *See Cadent*, 232 F.R.D. at 630. Depositions of corporate representatives in cases involving a non-judicial foreclosure of an HOA lien are usually short—less than an hour—and up until now have been conducted where the deponent is located. Requiring BANA's corporate representative to disrupt her daily schedule when she does not frequently travel to Las Vegas—for a deposition expected to last less than an hour and nearly five times the expected travel time[56]—would result in annoyance, undue burden, oppression,

[55] *Tailift*, 2004 WL 722244, at *3; *c.f. Okada v. Eighth Judicial Dist. Court*, 131 Nev. Adv. Op. 83, 2015 WL 6087182, at *1, 6 (Nev. 2015) (noting his prior deposition was "fraught with difficulties," previous discovery disputes, and "obstructionist behavior" on part of Okada's attorneys during Okada's prior deposition).

[56] See ex. 1, decl. of Darren Brenner, Esq.

{37721525;2}



AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

and expense. *See* Fed. R. Civ. P. 26(c). The court should grant BANA's motion because requiring BANA's corporate representative to travel to Nevada for a minimally useful deposition[57] will result in undue burden.

**IV. Conclusion**

For all the above reasons, the Court should enter a protective order. BANA requests the Court protect BANA from SFR's deposition notice by granting the motion for protective order in its entirety. Alternatively, BANA asks the Court restrict the deposition topics to those within the scope of discovery and not unduly cumulative of SFR's written requests and require the deposition proceed in Dallas as to BANA's witness.

DATED this 18th day of March, 2016.

**AKERMAN LLP**

*/s/* Donna M. Wittig
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
DARREN T. BRENNER, ESQ.
Nevada Bar No. 8386
DONNA M. WITTIG, ESQ.
Nevada Bar No. 11015
1160 Town Center Drive, Suite 330
Las Vegas, NV 89144

*Attorneys for Plaintiff Bank of America, N.A.*

[57] SFR has filed numerous lawsuits asserting similar claims against BANA as the present lawsuit. SFR infrequently decides to depose BANA's corporate representative, indicating its deposition is not significant to plaintiff's case. If the court denies BANA's motion for protective order, the perverse result will be upending established case law holding a corporate representative's deposition should occur where the corporate representative is located, not the forum state. The consequence will likely be noticing many more unnecessary depositions of senior lienholder corporate representatives.

AKERMAN LLP
1160 TOWN CENTER DRIVE, SUITE 330
LAS VEGAS, NEVADA 89144
TEL.: (702) 634-5000 – FAX: (702) 380-8572

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of March, 2016 and pursuant to FRCP 5, I served via CM/ECF a true and correct copy of the foregoing **MOTION FOR PROTECTIVE ORDER FROM THE 30(B)(6) DEPOSITION OF BANA**, to:

Diana Cline Ebron, Esq.
Jacqueline A. Gilbert, Esq.
Karen L. Hanks, Esq.
**KIM GILBERT EBRON**
7625 Dean Martin Drive, Suite 110
Henderson, NV 89139

*Attorneys for Defendant/Counter-Claimant, SFR Investments Pool 1, LLC*

James W. Pengilly, Esq.
Elizabeth B. Lowell, Esq.
Chad D. Fuss, Esq.
**PENGILLY LAW FIRM**
1995 Village Center Circle, Suite 190
Las Vegas, NV 89134-0562

*Attorneys for Defendant/Third-Party Plaintiff, Monterey Square at Mountain's Edge Homeowners Association*

*/s/* Donna M. Wittig
An employee of AKERMAN LLP

{37721525;2}